NOT FOR PUBLICATION                                    [Docket No. 9]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

TYRONE TAYLOR,

     Plaintiff,

        v.

LINCARE, INC., et al.,

     Defendants.

Civil No. 15-6284 (RMB/JS)

**OPINION**

APPEARANCES:

John M. Chomko
Law Offices of John M. Chomko
Staffordshire Professional Center
1307 White Horse Road
Building D
Voorhies, NJ 08043
    *Attorney for Plaintiff*

Salvador Simao
David S. Kim
Ford Harrison LLP
400 Connell Drive
Suite 5200
Berkeley Heights, NJ 07922
    *Attorney for Defendant Lincare, Inc.*

**BUMB**, UNITED STATES DISTRICT JUDGE:

    This matter comes before the Court upon the Motion to

Dismiss filed by Defendant Lincare, Inc. ("Lincare" or the

"Defendant") [Docket No. 9], seeking to dismiss the Second

Amended Complaint (the "Complaint" or "Compl.") brought by

Plaintiff Tyrone Taylor ("Taylor" or the "Plaintiff") [Docket

1

No. 1 Ex. C] for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court will grant the motion in its entirety.  The Plaintiff, however, will be granted leave to amend his complaint to cure the deficiencies identified herein.

## I.   <u>FACTUAL AND PROCEDURAL BACKGROUND</u>[1]

This dispute arises from Defendant Lincare's termination of Plaintiff on May 17, 2013.  Plaintiff's Complaint alleges that he was wrongfully terminated in violation of the New Jersey Law Against Discrimination ("NJLAD" or "LAD"), N.J.S.A. § 10:5-1, <u>et seq.</u>, as well as several tenets of contract law.  Specifically, Plaintiff alleges that he was discriminated against and wrongfully terminated because of his disability (Count One), that he was denied reasonable accommodations for his disability (Count Two), and that he was retaliated against for requesting reasonable accommodations for his disability (Count Three). Plaintiff also brings a claim for aiding and abetting a

---

[1] The facts recited herein are derived from the Plaintiff's Complaint.  The Court must accept the facts alleged in the Complaint as true for the purpose of this motion to dismiss. <u>See</u> <u>McTernan v. City of York</u>, 577 F.3d 521, 526 (3d Cir. 2009) ("In deciding a motion to dismiss, all well-pleaded allegations of the complaint must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them.") (internal quotations and citations omitted).

violation of the NJLAD (Count Four) and seeks punitive damages for the alleged NJLAD violations (Count Five).  Additionally, Plaintiff alleges that his termination breached an implied employment contract based upon Lincare's employee handbook/manual (Count Six) as well as a covenant of good faith and fair dealing included within that alleged implied contract (Count Seven), and that he detrimentally relied upon promises of continued employment (Count Eight).

Plaintiff, who suffers from "bilateral hearing loss," began working for Healthcare Solutions Inc. as a service representative in its Hainesport, New Jersey facility in October 2006.  Compl. ¶¶ 7, 10.  His responsibilities in this position included "transporting medical supplies and medical therapy equipment to patient's homes, . . . setting up medical therapy equipment for patient use, keeping the equipment sterilized and clean, and completing paperwork."  Id. at ¶ 7.  In October 2012, Healthcare Solutions Inc. merged with Lincare and Plaintiff was transferred to Lincare's Westville, New Jersey facility.  Id. at ¶ 8.  As an employee of Lincare, Plaintiff's "job title and job duties did not change."  Id.  Lincare, however, required all employees at the Westville facility, including Plaintiff, to have a Commercial Driver's License ("CDL").  Id.  Plaintiff did not have a CDL, though he was in the process of obtaining the

license throughout the time period relevant to this action.  Id.
at ¶¶ 8, 12.

    In January 2013, "plaintiff informed HR Manager Defendant,
Margaret (Peggy) Douglas ("Douglas")[2] that because of his heavy
workload and the lack of other experienced drivers," he had not
had enough time to study for the written CDL test and,
therefore, the process of obtaining his CDL was "taking more
time than expected."  Id. at ¶ 14.  According to the Plaintiff,
his heavy workload was due to the fact that Lincare was
"woefully understaffed," which required him to take on
"mandatory overtime," to perform the work of "new, untrained
drivers" and to "train new drivers."  Id. at ¶¶ 13, 34.

    In February 2013, Plaintiff learned that he would need a
renewed Medical Examiner Certificate ("MEC") in order to take
the written portions of the CDL examination.  Id. at ¶ 15.
Federal regulations require all operators of commercial motor
vehicles to be medically examined and certified as physically
qualified to operate such a vehicle.  49 C.F.R. § 391.45.
Plaintiff informed defendant Douglas of this and in turn she

---

    [2] It appears that Plaintiff has not served Douglas in this
action.  No appearance has been entered on her behalf in the
action and she has not answered the Complaint or otherwise
moved.  The instant motion is made on behalf of Defendant
Lincare only.  For ease of reference, the Court refers to
Lincare and Douglas collectively as the "Defendants", as
appropriate.

4

"referred him to a physician."  Compl. ¶ 15.  After seeing two physicians and "hearing specialists" in March and April 2013, Plaintiff obtained his MEC on April 6, 2013.  Id. at ¶ 16.

On March 22, 2013, prior to having obtained his MEC, Plaintiff received a "Final Written Warning" from Lincare regarding his failure to obtain the required CDL.  Id. at ¶ 17. Plaintiff then met with Douglas to advise her of his progress and ask for the "following morning off to complete the written test and the road test" for the CDL.  Id. at ¶ 18.[3]  Douglas denied his request because the "facility was too busy."  Id.

Plaintiff passed the first written portion of the CDL test on April 9, 2013, the second portion on May 4, 2013, and scheduled his driving test for May 29, 2013.  Id. at ¶¶ 19, 24. The driving test allegedly had to be scheduled weeks in advance "[d]ue to Penn DOT's [Pennsylvania Department of Transportation] limited availability of test dates."  Id. at ¶ 19.  In addition, the driving test had to be "performed using a company vehicle" driven to the test site by a driver who holds a valid CDL.  Id. at ¶ 20.  Plaintiff informed his immediate supervisor, John Hulsizer ("Hulsizer"), of his test date and these requirements and Hulsizer agreed to accompany Plaintiff to the driving test

---

[3] The Complaint refers to "numerous requests" for a "reasonable disability accommodation," yet this is the only request specifically identified in the Complaint.  Compl. ¶ 32.

on May 29, 2013 with the company truck.  Id. at ¶¶ 21-22.
Plaintiff believed that Hulsizer updated Douglas of this
development.  Id. at ¶ 23.  Despite having received the Final
Written Warning regarding his failure to obtain his CDL,
Plaintiff alleges that, between April 9, 2013 and his
termination, he was never informed by his employer that "his
progress toward the CDL was untimely, insufficient or
unsatisfactory to maintain his continued employment."  Id. at ¶¶
17, 25.  While Plaintiff alleges that he had received
"assurances" that "obtaining his CDL by the May 29, 2013 road
test date was sufficient," the Complaint does not specify when
or by whom these "assurances" were conveyed to him.  Id. at ¶
30.

On May 17, 2013, "Mr. Hulsizer informed plaintiff that now
Ms. Douglas was requiring him to obtain his CDL by the end of
the day or be fired."  Id.  Plaintiff was terminated later that
day because "it was impossible to reschedule the driving test
for May 17, 2013."  Id.

Plaintiff subsequently commenced a civil action against
Lincare, Douglas, and several unidentified John Doe defendants
in the Superior Court of New Jersey, Law Division, Camden County
on May 14, 2015.  [Docket No. 1].  Defendant Lincare removed the
action to federal court on the basis of diversity jurisdiction

on August 19, 2015.  <u>Id.</u>  On February 11, 2016, Defendant

Lincare filed the instant motion to dismiss.

**II.  <u>MOTION TO DISMISS STANDARD</u>**

To withstand a motion to dismiss under Rule 12(b)(6), "a

complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its

face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting

<u>Bell Atlantic Corp. v Twombly</u>, 550 U.S. 544, 570 (2007)).  "A

claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  <u>Id.</u>

at 663.  "[A]n unadorned, the defendant-unlawfully-harmed-me

accusation" does not suffice to survive a motion to dismiss.

<u>Id.</u> at 678.  "[A] plaintiff's obligation to provide the

'grounds' of his 'entitle[ment] to relief' requires more than

labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  <u>Twombly</u>, 550 U.S.

at 555 (quoting <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, a district court

should conduct a three-part analysis.  <u>See Malleus v. George</u>,

641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must 'take

note of the elements a plaintiff must plead to state a claim.'"

<u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 675).  Second, the court should

identify allegations that, "because they are no more than

conclusions, are not entitled to the assumption of truth." Id. at 680.  Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

Rule 12(b)(6) requires the district court to "accept as true all well-pled factual allegations as well as all reasonable inferences that can be drawn from them, and construe those allegations in the light most favorable to the plaintiff." Bistrian v. Levi, 696 F.3d 352, 358 n. 1 (3d Cir. 2012).  Only the allegations in the complaint and "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case" are taken into consideration. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994) (citing Chester County Intermediate Unit v. Pennsylvania Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990)).  A court may also "consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

"[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir.

1988). As such, the permissible role of a plaintiff's opposition brief is merely to explain "legal theories . . . that [] find support in the allegations set forth in the complaint." Id.

## III. LEGAL ANALYSIS

### A. NJLAD Claims

#### 1. Disability Discrimination

To establish a prima facie case of discriminatory discharge due to a disability in violation of the NJLAD, a plaintiff must allege "(1) that he is a member of a protected class [i.e. that he was disabled or perceived to be disabled]; (2) that he was otherwise qualified and performing the essential functions of the job; (3) that he was terminated; and (4) that the employer thereafter sought similarly qualified individuals for the job who were not members of his protected class." Joseph v. New Jersey Transit Rail Operations Inc., 586 F. App'x 890, 892 (3d Cir. 2014) (citing Victor v. State, 203 N.J. 383, 409 (2010)).

"The fourth element is needed to allow an inference to be drawn of disparate treatment, since if the disabled employee's job was given to a nondisabled person it could be inferred that the disabled employee received the adverse job action because of his or her disability." Rosenfeld v. Canon Bus. Sols., Inc., 2011 WL 4527959, at *19 (D.N.J. Sept. 26, 2011) (internal citations omitted). New Jersey courts have held that,

"[b]ecause of the variety of adverse employment actions that may occur short of termination . . . [t]he appropriate fourth element of a plaintiff's prima facie case requires a showing that the challenged employment decision . . . took place under circumstances that give rise to an inference of unlawful discrimination." Gadbois v. State, 2009 WL 1310973, at *5 (N.J. Super. Ct. App. Div. May 13, 2009) (internal quotations and citations omitted).

In the Complaint, Plaintiff alleges that he suffers from "bilateral hearing loss" and that he was terminated on May 17, 2013. Compl. ¶¶ 6, 30. Therefore, Plaintiff has sufficiently pled the first and third elements of the prima facie case for disability discrimination in violation of the NJLAD. The Complaint, however, fails to sufficiently plead the second and fourth elements of the claim.

With regard to the second element, Plaintiff makes the conclusory statement that he was a "qualified employee" throughout his employment with Lincare. Id. at ¶ 10. Yet he also readily admits that he did not have a CDL, even though it was a requirement for his position. Id. at ¶¶ 8, 12.

Plaintiff further alleges that he was often asked to "perform the work of new, untrained drivers," "train new drivers," and "take additional routes that could not be handled by inexperienced drivers." Id. at ¶¶ 13, 18. At most,

plaintiff alleges that he was asked to perform certain extra tasks.  He does not allege, however, that these were the essential functions of his job or that he was performing the essential functions of his job, as required.

The Court finds that the Complaint does not adequately plead the second element of the prima facie case of disability discrimination under the NJLAD.  Plaintiff's bare conclusion that he was a "qualified employee," the absence of allegations regarding whether Plaintiff was performing the essential functions of his job, and the fact that Plaintiff did not possess the CDL, which he was required to possess as a service representative at Lincare's Westville facility, are insufficient to establish that Plaintiff was otherwise qualified and performing the essential functions of his job.  See Bassett v. Rent-A-Ctr., 80 F. App'x 776, 779 (3d Cir. 2003) (affirming district court's determination that plaintiff failed to establish prima facie case of discriminatory discharge under NJLAD where plaintiff committed inventory discrepancies and did not promptly rectify errors, even though plaintiff also had "satisfactory work history and pattern of promotions").

Furthermore, Plaintiff's Complaint fails to allege any facts whatsoever in support of the final element of the prima facie case of disability discrimination under the NJLAD.  Plaintiff makes no allegations at all regarding whether Lincare

11

sought to hire anyone to replace him, let alone that it sought similarly qualified individuals who were not disabled. Plaintiff also has pled no facts that suggest that he was terminated under circumstances that give rise to an inference of unlawful discrimination.  In fact, Plaintiff does not even allege that his employer knew he was disabled.  See Conneen v. MBNA Am. Bank, N.A., 334 F.3d 318, 331 (3d Cir. 2003) (noting that, while an employer may be liable for discriminating against an employee "based upon the employee's known disability, neither the law nor common sense can demand clairvoyance of an employer in [defendant's] position.").

For these reasons, the Court will dismiss the Plaintiff's NJLAD disability discrimination claim (Count One) without prejudice.

### 2.   Failure to Provide Reasonable Accommodations

#### a)   Statute of Limitations

A claim for failure to reasonably accommodate under the NJLAD is subject to a two-year statute of limitations.  Montells v. Haynes, 133 N.J. 282, 291-93 (1993) (holding that a two-year statute of limitations for claims under the NJLAD is best aligned with the underlying rationale of statutes of limitations, as well as the types of injuries NJLAD claims seek to remedy).  Additionally, "[a] reasonable accommodation request is a one-time occurrence rather than a continuing practice, and

therefore, does not fit under the continuing violations theory." Mercer v. SEPTA, 608 F. App'x 60, 63 (3d Cir. 2015) (citing Aubrey v. City of Bethlehem, 466 F. App'x 88, 92 (3d Cir. 2012)).

Defendant correctly contends that Plaintiff's claim for failure to reasonably accommodate is time barred.  Plaintiff's response in opposition is a bald statement that the claim should not be dismissed as untimely with no arguments or case law to support his position.  Pl. Opp. Br. at 13 [Docket No. 10].  Any NJLAD claims arising before May 14, 2013, i.e. two years prior to the filing of this action, are time barred.  As Plaintiff was terminated on May 17, 2013, this leaves only a three-day window during which any timely claims could have accrued.

The Complaint states that Plaintiff "made numerous requests to Defendant . . . for reasonable disability accommodation." Compl. ¶ 32.  According to the Complaint, the requests for accommodation took the form of requests for "less overtime" so Plaintiff could have more time to study for the CDL tests and schedule the requisite doctor's appointments to obtain his MEC, in addition to a general "extension of time" to attain the CDL. Id. at ¶ 33.  However, the only specific request alleged in the Complaint, and its alleged denial, took place sometime between March 22, 2013, when Plaintiff received the "Final Written Notice," and April 9, 2013, which he passed the first written

portion of the CDL test.  Id. at ¶¶ 17-19.  As the entirety of
this time period takes place more than two years prior to the
filing of this action, any reasonable accommodation claim
accruing during this time is barred by the statute of
limitations.  In fact, any possible reasonable accommodation
claim, not currently pled, arising before May 14, 2013 would
also be untimely.  Therefore, without any other alleged denials
of requests for accommodation occurring on or after May 14, 2013
but no later than Plaintiff's termination on May 17, 2013,
Plaintiff's claim is untimely and must be dismissed with
prejudice.  The Court will nonetheless address the merits of the
reasonable accommodation claim as well.

### b)   Failure to State a Claim

To establish a claim under the NJLAD for failure to make a
reasonable disability accommodation, a plaintiff must allege
that "(1) [the plaintiff] was disabled and his employer knew it;
(2) he requested an accommodation or assistance; (3) his
employer did not make a good faith effort to assist; and (4) he
could have been reasonably accommodated."  Armstrong v. Burdette
Tomlin Mem. Hosp., 438 F.3d 240, 246 (3d Cir. 2006) (citing
Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 317-20 (3d Cir.
1999); Tynan v. Vicinage 13 of Superior Court, 351 N.J. Super.
385, 400-01 (App. Div. 2002)).  Requests for accommodation are
not restricted to written requests, nor must they cite to the

law or use the phrase "reasonable accommodation." <u>Taylor</u>, 184

F.3d at 317-20.  It is even permissible for another party, such

as a doctor or family member, to make the request on the

employee's behalf.  <u>Id.</u>  It is imperative, however, that the

request "make clear that the employee wants assistance <u>for his</u>

<u>or her disability</u>." <u>Jones v. United Parcel Service</u>, 214 F.3d

402, 408 (3d Cir. 2000) (emphasis added) (quoting <u>Taylor</u>, 184

F.3d at 313).  The request must be explicit enough so that "the

employer [knows] of both the disability and the employee's

desire for accommodations for that disability." <u>Taylor</u>, 184

F.3d at 313.

      Even if Plaintiff's reasonable accommodation claim were

not time barred, it must, nevertheless, be dismissed for failure

to state a claim.  The Complaint fails to allege the required

elements of the cause of action.  First, while the Complaint

alleges that Plaintiff has a disability, Compl. ¶¶ 6, 10,

nowhere does it allege that any of the Defendants were aware of

his disability.  In his opposition to Defendant's motion to

dismiss, Plaintiff, for the first time, argues that Lincare and

Douglas were aware of his disability because, for example,

Plaintiff wore hearing aids to work, Douglas had difficulty

communicating with Plaintiff, and Lincare was in possession of

the results of Plaintiff's hearing tests that he underwent to

obtain his MEC.  Pl. Opp. Br. at 10-11.  Yet absolutely none of

15

these alleged facts are contained in the Complaint.  The Court reiterates that "the complaint may not be amended by the briefs in opposition to a motion to dismiss." Zimmerman, 836 F.2d at 181.  As the Complaint is utterly devoid of any allegations that the Defendants were aware of Plaintiff's disability, the reasonable accommodation claim must be dismissed.

Additionally, the Complaint fails to adequately plead the second element of the claim, namely that the Plaintiff requested an accommodation for his disability.  While Plaintiff alleges that he made numerous requests for accommodations, Compl. ¶¶ 18, 32-33, he does not allege that he communicated to any of the Defendants that he requested these accommodations because of his disability.  In fact, in the Complaint, Plaintiff explicitly states that he made the requests for other reasons. Specifically, the Complaint alleges that Plaintiff requested time off and deadline extensions "because of his heavy workload and the lack of other experienced drivers" and "to complete the written [CDL] test and road test." See, e.g., id. at ¶¶ 14, 18. Additionally, the Plaintiff does not allege in the Complaint that he required more time to study because of his disability or that the Defendants were ever made aware of any connection between Plaintiff's disability and his requests for time off or extensions.  Plaintiff does not allege any facts that even suggest that he made it clear that he sought assistance for his

disability, as required to establish a reasonable accommodation claim under the NJLAD.  Jones, 214 F.3d at 408.  For this reason and because the claim, as currently pled, is barred by the statute of limitations, the Court will dismiss Plaintiff's reasonable accommodation claim (Count Two) with prejudice.

### 3.    Retaliation for Seeking Disability Accommodation

The NJLAD makes it unlawful "[f]or any person to take reprisals against any person because that person has opposed any practices or acts forbidden under" the NJLAD.  N.J.S.A. § 10:5-12(d).  To state a claim for reprisals or retaliation under the NJLAD, a plaintiff must allege facts showing that he "engaged in a protected activity that was known to the employer, that [he] was subjected to an adverse employment decision, and that there is a causal link between the activity and the adverse action."  LaPaz v. Barnabas Health Sys., 634 F. App'x 367, 369 (3d Cir. 2015) (citing Battaglia v. United Parcel Serv., Inc., 214 N.J. 518, 547 (2013)).

An employee engages in protected activity, for purposes of the first element, when he "opposes any practice rendered unlawful under the LAD."  Young v. Hobart W. Grp., 385 N.J. Super. 448, 466 (App. Div. 2005); accord Davis v. City of Newark, 417 F. App'x 201, 203 n. 2 (3d Cir. 2011).  "[T]aking a disability/medical leave is protected by the NJLAD."  Boles v.

17

Wal-Mart Stores, Inc., 2016 WL 2990406, at *3 (3d Cir. May 24, 2016).

With regard to the final element of the claim, the causal link between the protected activity and the adverse employment action can be demonstrated by temporal proximity that is unusually suggestive of a retaliatory motive. Tinio v. Saint Joseph Reg'l Med. Ctr., 2016 WL 1169121, at *2 (3d Cir. Mar. 25, 2016) (citing LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217, 232 (3d Cir. 2007)). "Where the temporal proximity is not unusually suggestive, '[courts] consider the circumstances as a whole, including any intervening antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action.'" Id. at *2 (quoting Daniels v. Sch. Dist. Of Phila., 776 F.3d 181, 196 (3d Cir. 2015)).

The Complaint fails to adequately plead the required elements of a retaliation claim under the NJLAD. First, the Complaint does not allege that Plaintiff engaged in any protected activity known to the Defendants. Plaintiff alleges merely that the adverse employment decisions he suffered were the "result of [his] unavailing efforts to engage Defendant, Lincare, Inc[.], in a good faith interactive process and to request appropriate disability accommodations." Compl. ¶ 39.

This Court, however, has already held that the Complaint fails to allege that he requested any accommodations for his disability.  Furthermore, Plaintiff has not alleged any facts regarding his supposed efforts to engage the Defendant in a good faith interactive process regarding accommodations.  As the Plaintiff does not allege that he informed his employer that his alleged requests for accommodations were for his disability, Plaintiff has failed to plead that he engaged in a protected activity that was known to his employer.

Additionally, the Plaintiff's bare conclusion that the adverse employment actions were "a result of" his alleged requests for disability accommodations is insufficient to establish the required causal link.  See id. at ¶ 39.  As the Court previously noted, the Complaint does not specify the date on which the alleged protected activity took place, but, according to the Complaint, the latest it could have occurred was April 9, 2013, the date Plaintiff passed the first written CDL test.  Id. at ¶¶ 17-19.  The adverse employment action, Plaintiff's termination, occurred on May 17, 2013.  Id. at ¶ 30. The passage of over five weeks, standing alone, is "not so close as to be unduly suggestive" of a retaliatory motive.  Escanio v. United Parcel Serv., 538 F. App'x 195, 200 (3d Cir. 2013) (finding that period of several weeks between protected activity and termination, without more, is not unduly suggestive of

19

retaliatory motive and cannot establish causal link as required
to support prime facie case of NJLAD retaliation); see also
Deans v. Kennedy House, Inc., 587 F. App'x 731, 735 (3d Cir.
2014) (holding that a two month span between the protected
activity and adverse employment action was not unduly suggestive
of retaliatory motive) (quoting Williams v. Phila. Hous. Auth.
Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004)); Thomas v. Town
of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003) (finding that
three week period between protected activity and termination was
insufficient, without other evidence, to establish required
causal link).  Plaintiff has alleged no other facts suggesting
that Lincare terminated him because of his alleged requests for
accommodation.  For these reasons, the Plaintiff's NJLAD
retaliation/reprisal claim (Count Three) will be dismissed
without prejudice.

### 4.   Aiding and Abetting NJLAD Violations

Plaintiff brings a claim for aiding and abetting NJLAD
violations against defendant Douglas and an unidentified Jane
Doe defendant.  As a preliminary matter, the Court once again
notes that it appears that defendant Douglas has never been
served and has not entered an appearance in this action.  For
that reason, Defendant Lincare's motion does not specifically
address the aiding and abetting claim, which is not asserted
against it.  Nonetheless, because the Court has dismissed the

underlying NJLAD claims upon which the aiding and abetting claim depends, the Court will also dismiss the aiding and abetting claim.

In order to hold an employee, such as defendant Douglas, liable for aiding and abetting a violation of the NJLAD, a plaintiff must allege the following elements: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." Tarr v. Ciasulli, 181 N.J. 70, 84 (2004) (internal quotations and modifications omitted) (citing Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 127 (3d Cir. 1999)).

The Court has already dismissed Plaintiff's NJLAD claims against Defendant Lincare because Plaintiff failed to adequately plead that Lincare performed a wrongful act in violation of the NJLAD.  Therefore, "because Plaintiff's underlying causes of action fail, there can be no claim for aiding and abetting in violation of the NJLAD."  Haddix v. Camden Cty. Youth Det. Ctr., 2015 WL 3755023, at *6 (D.N.J. June 16, 2015) (citing Ivan v. Cty. Of Middlesex, 595 F. Supp. 2d 425, 563 (D.N.J. 2009)); accord Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 307 n. 15 (3d Cir. 2004) (holding that, because plaintiff's underlying

NJLAD claim fails, "any claim he brought against the individual defendants for aiding and abetting fails as well."). Accordingly, Plaintiff's aiding and abetting claim (Count Four) will be dismissed without prejudice.

### 5. <u>Punitive Damages</u>

In Count Five of the Complaint, Plaintiff seeks punitive damages against the defendants for alleged NJLAD violations. This claim will be dismissed as well.  Punitive damages are a remedy, not a substantive cause of action.  <u>In re Paulsboro Derailment Cases</u>, 2015 WL 4914397, at *10 (D.N.J. Aug. 18, 2015).  As such, "[a]s a rule, a claim for punitive damages may lie only where there is a valid underlying cause of action." <u>Smith v. Whitaker</u>, 160 N.J. 221, 235 (1999).  Because this Court has dismissed the Plaintiff's underlying NJLAD claims, Plaintiff's punitive damages claim (Count Five) will also be dismissed without prejudice.

### B. Common Law Claims

Plaintiff also asserts several causes of action for wrongful termination under the principles of contract law. Compl. ¶¶ 52-66.  Defendant Lincare, in turn, contends that these common law claims are preempted by Plaintiff's NJLAD claims, as they "rely upon the same facts" and "allege the same injury" as the NJLAD claims.  Def. Motion at 11 [Docket No. 9] (citing <u>Gaines v. United Parcel Service</u>, 2014 WL 1450113, at *5

(D.N.J. Apr. 14, 2014); Schneider v. Sumitomo Corp. Of America, 2010 WL 2521774, at *4 (D.N.J. June 14, 2010)).

"Because of the broad availability of remedies under the LAD, both state and federal courts in New Jersey have frequently held that the LAD bars common law claims based on the same operative facts as underlie the LAD claim." Everson v. JPMorgan Chase Bank, 2013 WL 1934666, at *2 (D.N.J. May 8, 2013) (collecting cases). Therefore, "[w]here the factual predicates for the common law claims and the NJLAD claims are the same and the remedies sought are the same, the common law claims are barred." Gaines, 2014 WL 1450113, at *5.

Claims that assert rights separate from those protected by the NJLAD, however, will not be preempted. See Mosley v. Bay Ship Mgmt., Inc., 174 F. Supp. 2d 192, 201 (D.N.J. 2000) (finding that plaintiff's contract claims were not preempted by NJLAD claim because "the legislature intended that the LAD would supplement, rather than preempt, other causes of action."); see also Shaner v. Horizon Bancorp., 116 N.J. 433, 454 (1989) ("a plaintiff in appropriate circumstances could pursue an independent action . . . to vindicate particular interests in addition to or aside from those sought to be protected by a LAD action. The LAD does not prevent such an alternative.").

This Court, therefore, must determine not only whether Plaintiff's common law claims rely upon the same factual

predicates as the NJLAD claims, but also whether Plaintiff's
common law claims "vindicate any additional interests" beyond
those addressed by the NJLAD claims.  See, e.g., Campbell v.
Sedgwick, Detert, Moran & Arnold, 2012 WL 2576279, at *6-7
(D.N.J. July 2, 2012); Kairawala v. GE Aviation, 2009 WL
1973509, at *2 (D.N.J. July 7, 2009); see also Monaco, 359 F.3d
at 309, 309 n. 16 (holding that breach of contract claim was
preempted by NJLAD where claim was based on "generalized anti-
discrimination language in an employee handbook where the
alleged discrimination would be in violation of the NJLAD," but
noting that, had the "employee handbook stated that the company
does not discriminate on the basis of some characteristic not
covered by the NJLAD, then an individual might be able to assert
a breach of contract claim on that basis.").

Plaintiff asserts three common law claims: violation of an
implied contract based upon Lincare's employee handbook and
manual (Count Six), violation of an implied covenant of good
faith and fair dealing (Count Seven), and a detrimental reliance
and promissory estoppel claim (Count Eight).  In these claims,
Plaintiff essentially contends that he was wrongfully terminated
on May 17, 2013, even though his employer had allegedly assured
him of his continued employment assuming he passed his road test
on May 29, 2013 and obtained his CDL.  See, e.g., Compl. ¶¶ 54-
55 (Lincare "had communicated to plaintiff that his employment

would not be terminated pursuant to uniform past practice and stated policies provided that plaintiff could obtain his CDL on May 29, 2013, the date of the scheduled road test." Lincare "inexplicably failed to consider, provide and/or honor the deadline road test date it had approved before terminating plaintiff's employment.").

While Counts One through Five of the Plaintiff's Complaint allege that Lincare fired Plaintiff because of impermissible disability discrimination in violation of the NJLAD, Plaintiff's common law claims are instead premised on alleged contractual rights to employment that are unrelated to the alleged disability discrimination. Specifically, the common law claims assert that, based upon Lincare's uniform past practices, employee handbook, and discussions between Plaintiff and his supervisor, an implied employment contract existed that protected Plaintiff's employment so long as he obtained his CDL by May 29, 2013. Plaintiff also argues that he detrimentally relied upon his supervisor's promise of continued employment so long as he obtained his CDL after passing his road test scheduled for May 29, 2013. According to Plaintiff, in spite of these alleged promises of continued employment, Lincare nonetheless fired him on May 17, 2013.

Plaintiff's common law claims are unrelated to any alleged discrimination against him on the basis of his disability. As

such, they arise from a different set of operative facts and attempt to vindicate interest separate and distinct from those protected by the NJLAD. See, e.g., Kelly v. HD Supply Holdings, Inc., 2014 WL 5512251, at *5 (D.N.J. Oct. 31, 2014) (holding that common law wrongful discharge claim based upon plaintiff's making a workers' compensation claim was not preempted by NJLAD claims because "the common law claim could survive even if Plaintiff is not successful in his claim for wrongful discharge for disability discrimination in violation of the NJLAD."); Schneider, 2010 WL 2521774, at *5 (holding that contract claims were not preempted by NJLAD because "contract claims are based on terms of the employee manual  that are unrelated to discrimination; Plaintiff's contract claims are, instead, related to the manual's provisions on disability leave, vacation pay, etc."). [4]  As the common law claims are not preempted by the NJLAD, the Court now turns to the merits of the claims. [5]

---

[4] For the benefit of the parties, however, the Court notes that to the extent the common law claims, either as currently pled or as they may be amended in the future, are premised upon alleged breaches of any Lincare policies against discrimination, they are preempted by the NJLAD. Tourtellotte v. Eli Lilly & Co., 636 F. App'x 831, 840 (3d Cir. 2016) (quoting Monaco, 359 F.3d at 309) ("where the alleged discrimination would be in violation of the NJLAD, New Jersey law does not recognize 'a separate breach of contract cause of action on the basis of generalized anti-discrimination language in an employment handbook.'").

[5] The Court observes that Plaintiff's opposition brief addressed Defendant's preemption argument only.  Plaintiff made

### 1.   Violation of an Implied Contract and Violation of an Implied Covenant of Good Faith and Fair Dealing

"Under New Jersey law, the employment-at-will doctrine provides that an employer may fire an employee for [a] good reason, bad reason, or no reason at all unless prohibited by law or public policy.  Either party may terminate an employment relationship at will unless an agreement exists between the parties that provides otherwise." Monaco, 359 F.3d at 308 (internal quotations and citations omitted).  Such an agreement may be "implied from the circumstances of employment," such as "oral promises, representations, employee manuals, or the conduct of the parties, depending on the surrounding circumstances." Troy v. Rutgers, 168 N.J. 354, 365 (2001).

An employer's employee handbook or manual may, in certain circumstances, give rise to legally enforceable contractual rights.  See Monaco, 359 F.3d at 308.  Whether an employee manual creates an implied employment contract "turns on the reasonable expectations of employees." Nicosia v. Wakefern Food Corp., 136 N.J. 401, 408 (1994) (quoting Witkowski v. Thomas J. Lipton, Inc., 136 N.J. 385, 393 (1994)).  Courts should consider "the definiteness and comprehensiveness" of the employee manual and "the context of the manual's preparation and distribution."

_____

no attempt to refute Defendant's position that the common law claims should also be dismissed for failure to state a claim.

Delgado v. Raritan Bay Med. Ctr., 624 F. App'x 812, 813 (3d Cir.
2015) (citing Witkowski, 136 N.J. at 393).  "A company, however,
may prevent an employment guide from creating an implied
contract by including a 'clear and prominent disclaimer.'"  Id.
(quoting Woolley v. Hoffmann-La Roche, Inc., 99 N.J. 284, 285
(1985)); Holodak v. Rullo, 210 F. App'x 147, 151 (3d Cir. 2006).
"An effective disclaimer must be expressed in language 'such
that no one could reasonably have thought [the manual] was
intended to create legally binding obligations."  Nicosia, 136
N.J. at 413; accord Monaco, 359 F.3d at 308.

The Lincare employee handbooks that Plaintiff received both
contained explicit disclaimers on the pages which Plaintiff
signed.  Def. Motion Ex. 3 [Docket No. 9].[6]  The Employee

---

[6] The excerpt of the Lincare employee handbooks was not
attached as an exhibit to the Plaintiff's Complaint.  Rather, it
was submitted by Defendant Lincare as an exhibit to its Motion
to Dismiss.  Def. Motion Ex. 3.  In considering a motion to
dismiss under Rule 12(b)(6), "a court may examine the facts as
alleged in the pleadings as well as matters of public record,
orders, exhibits attached to the complaint and items appearing
in the record of the case."  Tilbury v. Aames Home Loan, 199 F.
App'x 122, 125 (3d Cir. 2006) (internal citations and quotations
omitted).  Furthermore, even though courts generally "may not
consider matters extraneous to the pleadings, a document
integral or explicitly relied upon in the complaint may be
considered without converting the motion to dismiss into one for
summary judgment."  Id. (quoting U.S. Express Lines Ltd. v.
Higgins, 281 F.3d 383, 388 (3d Cir. 2002); In re Burlington Coat
Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)).  Since
the Lincare employee handbooks are explicitly relied upon by
Plaintiff in the Complaint and are integral to Plaintiff's
contract claims, the Court may and will properly consider them.

Handbook Acknowledgement, signed by the Plaintiff, states in relevant part:

> [N]either this handbook, nor any other Company communication or practice, creates an employment contract for a specified period of time.  The Company reserves the right to make changes in content or application of its policies as it deems appropriate and these changes may be implemented even if they have not been communicated, reprinted, or substituted in this handbook.  It is also understood that nothing in this handbook or any other policy or communication changes the fact that employment is at-will and may be terminated at any time by you or by the Company with or without cause or notice.  Any employment not at-will must be by written contract and signed by an officer of the Company. . . . This handbook does not constitute a contract for employment with Lincare Inc. or any of its affiliates.

Id. at p. 2.

The Court finds that these statements are "sufficient to establish that the handbook was not an employment contract." Delgado, 624 F. App'x at 813 (considering disclaimer which stated that handbook was "not a contract of employment" and that employment was "AT-WILL").  The disclaimer in the Lincare employee handbook unambiguously and explicitly states that nothing in the "handbook or any other policy or communication changes the fact that employment is at-will and may be terminated at any time by you or by the Company with or without cause or notice."  Def. Motion Ex. 3 at p. 2 (emphasis added). Additionally, all changes to the terms of Plaintiff's employment were required to be in writing and signed by an officer of Lincare.  Id.  Therefore, regardless of the contents of the

employee handbook, Lincare's "uniform past practices", or any oral communications with Hulsizer regarding Plaintiff's employment, Plaintiff's employment remained at-will and subject to termination at any time for any or no reason.

Having read the disclaimer included in the employee handbook, no one, including Plaintiff, could have reasonably thought that the handbook intended to create any legally binding obligations on Lincare.  See Delgado, 624 F. App'x at 813-14. As Plaintiff has failed to adequately plead an essential element of the cause of action, namely the existence of an implied contract between the parties, his breach of an implied contract claim (Count Six) necessarily fails and will be dismissed without prejudice.  Frederico v. Home Depot, 507 F.3d 188, 203 (3d Cir. 2007) (noting that the first element of a breach of contract claim under New Jersey law is "a contract between the parties").

Furthermore, an implied covenant of good faith and fair dealing claim cannot stand absent an underlying express or implied contract.  Peter v. Vitran Exp., Inc., 2013 WL 6859843, at *2 (D.N.J. Dec. 30, 2013) ("a plaintiff cannot allege a breach of an implied covenant of good faith and fair dealing in the absence of an underlying contract.") (citing Noye v. Hoffmann-La Roche Inc., 238 N.J. Super. 430, 434 (App. Div. 1990)); Schneider, 2010 WL 2521774, at *7 n. 7 ("Plaintiff's

breach of the implied covenant of good faith and fair dealing
must be dismissed, as such a claim does not arise in the absence
of a contractual relationship.") (collecting cases).  Since the
Plaintiff has not sufficiently alleged the existence of a
contract between the parties, his implied covenant of good faith
and fair dealing claim (Count Seven) fails as well and will be
dismissed without prejudice.

### 2.   Detrimental Reliance and Promissory Estoppel

To state a claim for promissory estoppel under New Jersey
law, a plaintiff must allege four elements: "(1) a clear and
definite promise; (2) made with the expectation that the
promisee will rely on it; (3) reasonable reliance; and (4)
definite and substantial detriment." Obado v. Magedson, 612 F.
App'x 90, 94 (3d Cir. 2015) (citing Toll Bros. v. Bd. of Chosen
Freeholders of Cty. of Burlington, 194 N.J. 223, 253 (2008)).

"Under New Jersey law, the sine qua non of a promissory
estoppel claim is a clear and definite promise." Scagnelli v.
Schiavone, 538 F. App't 192, 194 (3d Cir. 2013) (quoting Ross v.
Celtron Int'l, Inc., 494 F. Supp. 2d 288, 296 (D.N.J. 2007)).
"Indefinite promises or promises subject to change by the
promisor are not 'clear and definite' and cannot give rise to a
claim for promissory estoppel." Mejias v. Am. Boychoir Sch.,
2011 WL 3235711, at *5 (D.N.J. July 27, 2011) (quoting Del
Sontro v. Cendant Corp., 223 F. Supp. 2d 563, 574 (D.N.J.

2002)).  Furthermore, a "truthful statement as to the present intention of a party with regard to future acts is not the foundation upon which an estoppel may be built."  Alexander v. CIGNA Corp., 991 F. Supp. 427, 439 (D.N.J.), aff'd, 172 F.3d 859 (3d Cir. 1998) (quoting In re Phillips Petroleum Sec. Litig., 881 F.2d 1236, 1250 (3d Cir. 1989)).

Plaintiff claims that he was terminated on May 17, 2013 "contrary to the assurances plaintiff had received that obtaining his CDL by the May 29, 2013 road test date was sufficient."  Compl. ¶ 30.  He further states that Lincare "had communicated to plaintiff that his employment would not be terminated pursuant to uniform past practice and stated policies provided that plaintiff could obtain his CDL on May 29, 2013, the date of the scheduled road test."  Id. at ¶ 54.  Yet Plaintiff does not allege when or by whom the communications and assurances were made or the substance of the alleged assurances. Plaintiff merely alleges that Hulsizer told Plaintiff "he would accompany him to the CDL driver's test on May 29, 2013 and bring the company van."  Id. at ¶ 22.

Without more, these allegations are not sufficient to plead a "clear and definite" promise for purposes of a promissory estoppel or detrimental reliance claim.  At most, Plaintiff has alleged an indefinite promise or a "truthful statement as to the present intention of [Hulsizer] with regard to future acts,"

32

i.e. accompanying Plaintiff to his road test, neither of which are sufficient to give rise to a promissory estoppel claim.  See Alexander, 991 F. Supp. at 439; accord Zhejiang Rongyao Chem. Co. v. Pfizer Inc., 2012 WL 4442725, at *6 (D.N.J. Sept. 21, 2012) (dismissing promissory estoppel claim where complaint was "devoid of any specific allegations regarding who communicated the alleged promise . . . , when and where it was made, or what the specific parameters of the promise were.").

Additionally, Plaintiff has not alleged that he reasonably relied upon Hulsizer's alleged promises of continued employment through the May 29, 2013 road test.  As the Court has already found, Hulsizer's alleged promise was at most a statement of his intention with regard to a future act.  "[R]eliance upon a mere expression of future intention cannot be 'reasonable,' because such expressions do not constitute a sufficiently definite promise."  In re Phillips Petroleum, 881 F.2d at 1250. Furthermore, reliance on any oral assurances or communications regarding Plaintiff's employment status would be unreasonable in light of the disclaimer in the Lincare employee handbook received and signed by Plaintiff, which prominently and explicitly stated that "nothing in this handbook or any other policy or communication changes the fact that employment is at-will and may be terminated at any time by you or by the Company with or without cause or notice" and that any changes to an

employee's employment status "must be by written contract and signed by an officer."  Def. Motion Ex. 3.  See Worbetz v. Ward N. Am., Inc., 54 F. App'x 526, 532 (3d Cir. 2002) (finding that plaintiff who agreed to be an at-will employee, and signed documents to that effect, could not show reasonable reliance on a promise of employment for two-year term).

Lastly, Plaintiff has not adequately alleged that he suffered any definite and substantial detriment.  To sustain a promissory estoppel claim in the context of at-will employment, a plaintiff must allege that he suffered "detriment beyond that suffered by every at-will employee upon termination."  Swider v. Ha-Lo Indus., Inc., 134 F. Supp. 2d 607, 620 (D.N.J. 2001).  In essence, a plaintiff must allege that he sustained "losses incident to the reliance upon the job offer itself," such as relocating, incurring moving expenses, giving up clients, or other costs undertaken because of the job offer or promise of continued employment.  See Peck v. Imedia, Inc., 293 N.J. Super. 151, 167 (App. Div. 1996).  The Complaint does not set forth any definite and substantial detriment Plaintiff suffered as a result of any alleged promises by Hulsizer or Lincare, such as costs incurred in taking or scheduling the CDL tests, for example.  As Plaintiff has not alleged that he "incurred some external, additional cost in reliance of the defendant's representations . . . beyond that suffered by every at-will

employee upon termination," he has also failed to adequately plead the final element of a promissory estoppel claim.  <u>See</u> <u>Swider</u>, 134 F. Supp. 2d at 620.

For each of these reasons, Plaintiff's promissory estoppel and detrimental reliance claim (Count Eight) will be dismissed without prejudice.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant Lincare's Motion to Dismiss is GRANTED.  While this Court harbors doubts concerning Plaintiff's ability to remedy certain deficiencies identified herein, the Court will nonetheless grant Plaintiff leave to amend his complaint within twenty-one (21) days of the entry of this Opinion and the accompanying Order to cure the deficiencies identified by the Court, to the extent that he is able to and chooses to do so.  Indeed, Plaintiff may well abandon many, if not all, of his claims.  In the event that no amended complaint is timely filed, the Clerk of the Court shall close the file in this matter.  An appropriate Order shall issue on this date.


                              s/Renée Marie Bumb
                              RENÉE MARIE BUMB
                              UNITED STATES DISTRICT JUDGE


Dated: <u>July 15, 2016</u>

35